CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 2 6 2008

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| KENNETH EDWARD BARBOUR,<br>     Plaintiff, | ) <br> ) <br> ) | Civil Action No. 7:08-cv-00598 |
| v. | ) <br> ) | |
| WESTERN REGIONAL<br>DIRECTOR VDOC, et. al.,<br>     Defendants. | ) <br> ) <br> ) <br> ) | |
| KENNETH EDWARD BARBOUR,<br>     Plaintiff, | ) <br> ) <br> ) | Civil Action No. 7:08-cv-00601 |
| v. | ) <br> ) | |
| VDOC DIRECTOR INMATE<br>HEALTH SERVICES, et. al.,<br>     Defendants. | ) <br> ) <br> ) <br> ) | |
| KENNETH EDWARD BARBOUR,<br>     Plaintiff, | ) <br> ) <br> ) | Civil Action No. 7:08-cv-00602 |
| v. | ) <br> ) | |
| WESTERN REGIONAL<br>DIRECTOR VDOC, et. al.,<br>     Defendants. | ) <br> ) <br> ) <br> ) | |
| KENNETH EDWARD BARBOUR,<br>     Plaintiff, | ) <br> ) <br> ) | Civil Action No. 7:08-cv-00603 |
| v. | ) <br> ) | |
| CAPTAIN REYNOLDS, et. al.,<br>     Defendants. | ) <br> ) <br> ) | |

1

| | |
|---|---|
| KENNETH EDWARD BARBOUR,<br>    Plaintiff, | Civil Action No. 7:08-cv-00604 |
| v. | |
| WESTERN REGIONAL<br>DIRECTOR VDOC, et. al.,<br>    Defendants. | |
| KENNETH EDWARD BARBOUR,<br>    Plaintiff, | Civil Action No. 7:08-cv-00605 |
| v. | |
| WESTERN REGIONAL<br>DIRECTOR VDOC, et. al.,<br>    Defendants. | |
| KENNETH EDWARD BARBOUR,<br>    Plaintiff, | Civil Action No. 7:08-cv-00606 |
| v. | |
| VDOC WESTER REGIONAL<br>DIRECTOR, et. al.,<br>    Defendants. | |
| KENNETH EDWARD BARBOUR,<br>    Plaintiff, | Civil Action No. 7:08-cv-00607 |
| v. | **MEMORANDUM OPINION** |
| BRYAN WATSON, et. al.,<br>    Defendants. | By: Hon. James C. Turk<br>**Senior United States District Judge** |

Plaintiff Kenneth Edward Barbour, a Virginia inmate proceeding pro se, has submitted eight (8) complaints on forms designed to assist inmates in filing actions under the Civil Rights Act, 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. These eight complaints name similar, but not identical groups of defendants, all of whom appear to be employees of the Virginia

2

Department of Corrections (VDOC). Barbour apparently is not happy about several aspects of his life at Wallens Ridge State Prison ("WRSP"), the VDOC institution where he is currently incarcerated. Upon consideration of the complaints, the court finds that all eight actions should be consolidated and dismissed pursuant to 28 U.S.C. §1915A(b)(1) for failure to state a claim.[1]

I

It is difficult to summarize the contents of these complaints, because they consist primarily of nonsense phrases. Each complaint form contains line after line of garbled, stream of consciousness prose, which uses English words, but for the most part, does not offer any coherent description of events or claims. The claims section of Case No. 7:08CV00598, for example, reads as follows, <u>verbatim</u>:

> I note the courts with note to the godly laws of natural man of which I've broken, but not to recive the enlightment of nay bit of man of dishonor with note to the Honorable courts with a tour base complaint of crule and unusual punishment. I greek the Honorable Courts of Wise County with my true godly intention to never work for spoiled food again, with the same intentions to be held in my work for good will, noting if I'm lazy in my work I work to destroy the false gospel of Jesus. I note the Honorable Courts with the evil roots dishonored justice, or evil found in ungodly bodies of prehistoric time periods, with a cycel of evil only giving me the cycels of crule and unusual punishment by truste plublic servants of black vehicles.

Barbour attaches other documents to the § 1983 complaint forms, such as the inmate account report and verified statement form regarding exhaustion of administrative remedies and copies of disciplinary charge paperwork, informal complaints, and grievances. The majority of these documents are also covered with the same type of incoherent, rambling phrases. The relief he seeks from the court in each of these complaints is similar, but not identical; each complaint states a

---

[1] A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under §1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted."

3

demand of "1.3 million dollars" and requests some sort of sentence reduction and/or transfer back to Greensville Correctional Center.

Careful review and liberal construction of hisrambling allegations and attachments, however, reflects that buried among his general complaints about prison officials, Barbour is attempting to raise several individual claims. The court will liberally construe his submissions as alleging the following grounds for relief:

1. Plaintiff's $78.10 radio disappeared from his property in October 2007.

2. Prison officials wrongfully confiscated his eye glasses for several weeks.

3. For two months, plaintiff did not receive his "welfare bags" (referring to a packet of personal hygiene materials and postage provided to indigent inmates).

4. Officers "sexually harassed" plaintiff by making comments about his body parts during visual strip searches conducted as part of the cell shake-down procedure.

5. When plaintiff was on his way to visit the institutional attorney with a stack of legal documents, officials forced him to undergo a strip search, but did not search his legal materials.

6. After a doctor ordered in October 2007 that plaintiff should receive a chest X-ray, plaintiff went for months without receiving one.

7. As to all of plaintiff's claims, prison officials failed to follow their required duties in addressing plaintiff's grievances.

Aspects of these claims are mentioned in different places throughout Barbour's eight complaints and attachments. Accordingly, the court finds it appropriate to consolidate the actions for disposition.

II

To state a cause of action under §1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation

4

resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). None of Barbour's claims rise to constitutional proportions.

## A. Property Claims

Barbour's first two claims are, essentially, that prison officials wrongfully confiscated his radio[2] and his eye glasses. Allegations that prison officials randomly deprived an inmate of his property, whether intentionally or as a result of negligence, do not state any constitutional claim "if a meaningful post-deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517 (1984). Barbour has alleged that officials "tricked" him into signing off on a property inventory sheet that did not include the radio, and by the time he discovered the mistake, the radio had disappeared; Barbour believes an officer or his cellmate took the radio. Inasmuch as plaintiff possessed tort remedies to seek monetary compensation under Virginia state law, see Virginia Code § 8.01-195.3, it is clear that he cannot prevail in a constitutional claim for the alleged property loss in this case as to any claim that officers randomly took his radio or eyeglasses.

Barbour may be arguing that the deprivation of his eye glasses was accomplished pursuant to an official security policy of some sort. Deprivations pursuant to official policy sometimes require pre-deprivation procedures. Parratt v. Taylor, 451 U.S. 527, 537 (1981). A post-deprivation remedy for mistaken deprivations will suffice, however, where the property interest at stake is adequately protected by such procedures Zinermon v. Burch, 494 U.S. 113, 126 (1990).

Barbour alleges that his black plastic, tinted eye glasses were approved by medical and security at his former institution and again at WRSP, but were nevertheless confiscated for several

---

[2] Barbour sometimes identifies the missing item as a Walkman am/fm tape player and headphones, but sometimes refers to it only as a radio or a "78.10 radio."

5

weeks, apparently because additional approval was needed from the medical unit or security personnel.[3] Barbour has alleged no facts suggesting that post-deprivation remedies available to him at the prison are inadequate to protect his property interests under these circumstances, however. Accordingly, the court will dismiss claim1 and 2, pursuant to § 1915A(b)(1), for failure to state a claim of constitutional dimensions.

B. Welfare Bags

In Claim 3, Barbour alleges that he was deprived of "welfare bags" for two months. Inmates have no constitutional right to receive these bags, but they do have a right to receive the basic necessities for life. The Eighth Amendment protects prisoners from cruel and unusual living conditions. Rhodes v. Chapman, 452 U.S. 337 (1981). In order to state a claim of constitutional significance regarding prison conditions, however, a plaintiff must allege facts demonstrating that the challenged conditions resulted in a deprivation of a basic human need that was objectively "sufficiently serious" and (2) that, subjectively, the defendant prison officials acted with a sufficiently "culpable state of mind" with regard to the conditions. Wilson v. Seiter, 501 U.S. 294, 298 (1991). Plaintiff must show that he has sustained a serious or significant mental or physical injury as a result of the alleged deprivation. Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993). Barbour does not allege suffering any ill effects whatsoever from being deprived of the items

---

[3] Barbour does not allege any facts indicating that he had any serious medical need to wear these glasses continuously or that he suffered any serious medical symptoms as a result of being without his glasses for awhile. Therefore, the court will not construe this claim as alleging deliberate indifference to a serious medical need related to his eye glasses. See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) ("deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain) (internal quotations and citations omitted).

6

in the "welfare bags." Accordingly, he fails to meet the "injury" requirement under Strickler, and the court will dismiss this claim, pursuant to §1915A(b)(1).

## C. Sexual Harassment

Barbour does not offer any detailed allegations in support of claim 4, alleging sexual harassment. As best the court can determine from his scattered mentions of this claim, he alleges that when WRSP officers do the required visual strip searches of his body during cell shake downs, they make sexually explicit, degrading comments about parts of his anatomy.

Verbal abuse and harassment by guards, without more, does not state any constitutional claim. See Cullins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979); Hudspeth v. Figgins, 584 F.2d 1345, 1348 (4th Cir. 1978). The constitution does not "protect against all intrusions on one's peace of mind." Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991). A guard's verbal harassment or idle threats to an inmate, even if they cause an inmate fear or emotional anxiety, do not constitute an invasion of any identified liberty interest. Id.; Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985)(calling an inmate an obscene name did not violate constitutional rights); Ellingburg v. Lucas, 518 F.2d 1196, 1197 (8th Cir. 1975)(defamation does not implicate any constitutionally protected right); Keyes v. City of Albany, 594 F. Supp. 1147 (N. D. N.Y. 1984)("[T]he use of vile and abusive language [including racial epithets], no matter how abhorrent or reprehensible, cannot form the basis for a §1983 claim."). As Barbour alleges nothing more than verbal harassment from the officers, the court finds no constitutional violation here, and will dismiss claim 4 without prejudice, pursuant to § 1915A(b)(1).

## D. Strip Search

Barbour also fails to allege any detailed account of the incident behind claim 5. He apparently complains that it was illogical to require him to undergo a visual strip search of his nude body before he could visit with the institutional attorney, while at the same time allowing him to take a stack of unsearched legal documents into the visit with him.

The inquiry of federal courts into prison management is limited under §1983 to whether a particular policy violates any constitutional provision; outside this inquiry, courts must leave judgment calls to the expertise of prison officials. See Bell v. Wolfish, 441 U.S. 520 (1979); Block v. Rutherford, 468 U.S. 576 (1984)(courts cannot substitute their own judgment on institutional management for that of prison officials). In the Bell case, the United States Supreme Court rejected a Fourth Amendment challenge to a detention center policy requiring visual body cavity searches of pretrial detainees and convicted prisoners who were re-entering the jail population after a contact visit. 441 U.S. at 523. The policy required, "If the inmate is a male, he must lift his genitals and bend over to spread his buttocks for visual inspection." Id. at 524.

Barbour does not allege that the strip search he underwent before seeing the institutional attorney was any more invasive than the searches upheld in Bell. Clearly, prison officials have a security interest in ensuring that convicted inmates at a maximum security prison such as WRSP have no opportunity to smuggle contraband into a visiting room with a member of the noninmate public. The court will not second guess prison officials' decisions to search the inmate, but not the legal papers in this case. In any event, it is highly likely that the failure to search Barbour's papers was, at most, inadvertent oversight. Such mere negligence by prison officials is not sufficient to state any claim of deprivation of constitutional rights. Daniels v. Williams, 474 U.S. 327 (1986);

8

Pink v. Lester, 52 F.3d 73, 77 (4th Cir. 1995). The court will dismiss claim 5 without prejudice, pursuant to § 1915A(b)(1).

### E. Delay of X-ray

To prove that his course of medical treatment in prison amounted to a violation of the Eighth Amendment, plaintiff must show that personnel to whose care he was committed exhibited "deliberate indifference" to his "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104-105 (1976). The plaintiff must show that the medical need to which the defendants were allegedly deliberately indifferent was objectively sufficiently serious. Such a need usually involves a condition that threatens loss of life or illnesses or injuries that threaten the inmate with permanent disability. Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir.1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1974) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). To prove that officers acted with deliberate indifference to his need, the inmate must show that the official was aware of objective evidence, from which he could draw an inference that a substantial risk of harm existed, and that he drew that inference. Farmer v. Brennan, 511 U.S. 825 (1994). Mere negligence or malpractice does not violate the Eighth Amendment. Estelle, 429 U.S. at 106.

In claim 6, Barbour alleges that after he was injured in some unidentified way during an altercation with another inmate in October 2007, a doctor who examined him recommended that he undergo a chest X-ray "when ever an X-ray technician was available." Barbour went for several months without receiving a chest X-ray. His allegations do not indicate when or if he was ever X-rayed, why the doctor thought an X-ray would be beneficial, or that Barbour suffered any ill effects

9

whatsoever from delay or denial of the recommended X-ray. However, it is clear from the nature of the doctor's recommendation that the doctor did not consider Barbour to have an immediate or serious need for a chest X-ray. Moreover, from looking at that order, prison officials reasonably could have believed that delay of the X-ray did not place Barbour at any risk of suffering serious physical harm. Accordingly, claim 6 fails under both aspects of Estelle and must be dismissed, pursuant to § 1915A(b)(1).

## F. Prison Grievance Procedures

Woven through Barbour's complaints is a litany of accusations that prison officials do not provide forms, do not respond to inmate complaints or grievances promptly, and do not respond appropriately to inmate grievances. Inmates do not have a constitutionally protected right to a grievance procedure. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) and Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991). Because a state grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the state's grievance procedure is not actionable under § 1983. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), cert. denied, 488 U.S. 898 (1989); Azeez v. De Robertis, 568 F. Supp. 8, 9-11 (N.D.Ill. 1982). Moreover, because state grievance procedures are separate and distinct from state and federal legal procedures, an officer's failure to comply with state grievance procedures does not compromise an inmate's right of access to the courts. Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991). Under these principles, the court finds no respect in which Barbour's complaints state any claim of constitutional significance regarding officials' compliance or lack of compliance with the grievance procedures. Claim 7 must be dismissed without prejudice, pursuant to § 1915A(b)(1)

Case 7:08-cv-00604-JCT-mfu Document 2 Filed 11/26/08 Page 10 of 11 Pageid#: 49

III

In conclusion, the court finds that Barbour's complaints, consolidated and taken in the aggregate in the light most favorable to him, fail to allege facts stating any claim that he has been deprived of constitutional rights. Accordingly, the court will dismiss each of the eight complaints without prejudice, pursuant to § 1915A(b)(1). An appropriate order shall be entered this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 26th day of November, 2008.

/s/ James C. Turk
Senior United States District Judge